JOSHUA H. WARD *vs.* JOHN W. PROCTOR & another.

An attachment made while the insolvent law of 1838, *c.* 163, was suspended by *St* 1842, *c.* 71, is dissolved by an assignment of the debtor's property, made under the former statute since it went again into operation by the repeal of the United States bankrupt act of 1841.

WRIT OF ENTRY to recover lands in Danvers. The case was submitted to the court on facts agreed, as follows ·

Both parties claim the demanded premises under James Brown, jr. The demandant claims under a deed from S. Upton, a deputy sheriff, conveying said Brown's equity of redemption of said premises, which was sold to the demandant at auction, on the 11th of May 1843. Said sale was made by the said Upton on executions against the said Brown, issued on judgments recovered against him in the court of common pleas, at March term 1843, the last day of which was April 1st 1843. The demanded premises were attached on mesne process, in the several suits in which said judgments were recovered. One attachment was made on the 28th of October, one on the 15th of November, one on the 12th of December, 1842, one on the 7th of January, and the other on the 2d of February, 1843. Two of said executions were dated April 3d, two of them April 10th, and one of them April 17th, 1843. The demanded premises were seized upon two of said executions on the 7th of April, upon two of them on the 10th of April, and upon the other on the 17th of April : 843

On the 3d of April 1843, said James Brown, jr. applied to a master in chancery for the benefit of the insolvent law, St. 1838, c. 163, and a warrant was duly issued on the same day to a messenger, who took possession of said Brown's estate, and on the 4th of said April made the first publication of notice that said warrant had issued. The tenants were chosen assignees of said Brown, and a deed of his property, including the demanded premises, was made to them as such, by the master in chancery, on the 15th of April 1843 ; which deed was left at the registry of deeds on the 19th of said April.

*Ward*, pro se.

*Proctor*, for the tenants.

SHAW, C. J. Both parties claiming title from the same person, and both by operation of law, and not by grant from the owner the question is, whether the demandant obtained the better title, in virtue of the attachment and levy, or the tenants, under the assignment made to them in the course of the proceedings in insolvency. On a comparison of dates, it appears that judgment was entered in favor of the demandant's grantor on the 1st of April 1843 ; but no seizure on execution was made,

and no step towards the levy taken, till the 7th of the same month. On the 3d, the debtor applied for proceedings in insolvency, and the warrant was issued. The first publication of notice was made on the 4th of the same April. It is obvious, therefore, that the tenants' title commenced at a time prior to the demandant's, so far as the latter depends on the levy of the execution, and must prevail, unless the title of the latter is aided by a previous valid attachment. The question therefore is, whether the attachment was dissolved by the proceedings in insolvency.

The insolvent law, *St.* 1838, *c.* 163, § 5, does in terms declare, that all attachments shall be dissolved by the assignment of the debtor's property. But there is a clause in § 25, saving from the repealing provision all rights which have accrued to any person, by virtue of the provisions of law so repealed. It has been already decided, as the true exposition of these enactments, that all attachments made after the law went into operation were dissolved, though made before the assignment; but that attachments, made before the act went into operation, conferred rights which were preserved by the saving clause, and that the attachments so made were not dissolved. *Kilborn* v. *Lyman,* 6 Met. 299. But by *St.* 1842, *c.* 71, with one exception, the operation of the insolvent law was suspended so long as the bankrupt law of the United States should continue in force. The bankrupt law was subsequently repealed, such repeal to take effect from and after the 3d of March 1843; so that at that time the insolvent law went into active operation again, without further legislative act, as if it had not been suspended. Now the demandant contends, that inasmuch as his attachment was made whilst the insolvent law was suspended, the saving clause operates to preserve his attachment after the revival of the law, in the same manner as it operated to save attachments made before it originally went into operation. But the court are of opinion that this is not a just application of the saving clause of the insolvent law. The present case is not within the letter of the act, and we think there is no such analogy as to bring it within the principle and spirit of the act.

Ward *v.* Proctor & another.

The words of *St.* 1838, *c.* 163, § 5, declare all attachments, existing at the time the insolvent proceedings take effect, dis solved, in pursuance of the general principle of insolvent laws, that legal remedies, provided in the ordinary course of justice, for satisfying a single creditor, shall yield to a sequestration designed for the benefit of all creditors. But when a new act for the first time established such a policy, and provided a series of measures for carrying it into effect, it seemed fit to declare, that when a particular creditor had sought a remedy under then existing laws, and thereby acquired a qualified right, it should not be disturbed. But this saving clause is very limited. After declaring all provisions of law, inconsistent with the act, repealed, it adds, " saving all rights which have accrued to any person by virtue of the same," that is, by such provisions of law before they were repealed ; and consequently before the insolvent law was enacted and went into operation. The demandant's attachment is not within the terms of this provision, because it was not made before the insolvent law went into operation. Nor is it within the reason and principle. The insolvent law, during its suspension, existed to many purposes. It was suspended only during the existence of another system of paramount authority, designed for the accomplishment of the same purpose, namely, a general and equal distribution of the property. When, therefore, the operation of this suspending law ceased, the original act was reinstated in active operation, and took effect from its original enactment.

The court are therefore of opinion, that although the attachment, under which the demandant claims, was made whilst the insolvent law of 1838 was suspended, and during the existence and operation of the bankrupt law of the United States, it was not continued in force so as to preserve the attachment after that suspension ceased ; that the attachment was dissolved by the proceedings on the insolvent act, which were commenced before the service of the execution ; and that the tenants, as assignees under those proceedings, have the better title.

*Judgment for the tenants.*